**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TYRONE RANDOLPH, | : | **HON. NOEL L. HILLMAN** |
|  | : |  |
| Petitioner, | : | Civil No. 10-4107 (NLH) |
|  | : |  |
| v. | : |  |
|  | : |  |
| DONNA ZICKEFOOSE, | : | **OPINION** |
|  | : |  |
| Respondent. | : |  |

**APPEARANCES:**

    TYRONE RANDOLPH, #08225-067
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, NJ  08640
    Petitioner Pro Se

**HILLMAN, District Judge**

It appearing that:

1. On August 10, 2010, Tyrone Randolph, an inmate confined at FCI Fort Dix in New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the Bureau of Prison's ("BOP") failure to transfer him to a community corrections center ("CCC"), also known as a residential reentry center ("RRC"), for the final year of his 180-month term of incarceration.

2. The Second Chance Act modified the pre-release custody placement statute by (1) doubling the pre-release placement period from six to 12 months, (2) requiring the BOP to make CCC

placement decisions on an individual basis, and (3) requiring the BOP to ensure that, consistent with the factors in 18 U.S.C. § 3621(b), the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration. See 18 U.S.C. § 3624(c).

 3. Petitioner asserts the following facts.  Petitioner is serving a 180-month term of imprisonment that was preceded by a state term that began in July 1995.  Petitioner's projected release date is September 11, 2011.  Petitioner asserts that on November 19, 2009, "Petitioner met with his Unit Team and was advised that he would be receiving 5-6 months RCC Placement (Halfway House) prior to the expiration of his custodial term.  Petitioner sought to challenge the RCC placement time administratively by filing the appropriate paperwork with his unit team.  Months had passed and no response was given regarding the request for expanded RCC placement.  When he asked about the approval, or denial of the request, he was told that the request had never been received."  (Docket Entry #1, p. 8.)  He asserts that "placement needs to ensure successful reintegration into society are in jeopardy if given six months or less in RCC." (Id., p. 9.)  He argues that he "qualifies for one year halfway house and/or community confinement and should be granted this one year term in order to successfully reintegrate into society."

(Id., p. 4.) He asks this Court to direct the BOP to re-evaluate his placement for a term of one year. (Id., p. 10.)

4. The Habeas Rules require the assigned judge to review a habeas petition prior to ordering an answer and to sua sponte dismiss the petition under certain circumstances:

> The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner . . . .

28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b).

5. The Supreme Court explained the pleading and summary dismissal requirements of Habeas Rules 2 and 4 as follows:

> Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is, and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 . . . (1957). Habeas Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)) . . . .

3

> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243.  Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in district court," the court must summarily dismiss the petition without ordering a responsive pleading.

Mayle v. Felix, 545 U.S. 644, 655 (2005); see also McFarland v. Scott, 512 U.S. 849, 856 (1994); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

    6.  The BOP's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by the BOP who "seek formal review of an issue relating to any aspect of his/her confinement."  28 C.F.R. § 542.10(a).  An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form.  See 28 C.F.R. § 542.13. If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden. See 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11). See 28 C.F.R. § 542.15(a).  Appeal to the General Counsel is the final administrative appeal.  Id.  The regulations further provide that the Warden shall respond within 20 calendar days;

4

the Regional Director shall respond within 30 calendar days; and the General Counsel shall respond within 40 calendar days.  See 28 C.F.R. § 542.18.  And the regulation provides that if the inmate does not receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level.  Id.

    7.  Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241."  Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).  The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  Moscato v. Federal Bureau of Prisons, 98 F. 3d 757, 761-62 (3d Cir. 1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

    8. The face of the Petition shows that Petitioner did not exhaust administrative remedies and Petitioner has not shown that exhaustion would be futile or that the purposes of exhaustion would not be served in his case.

    9. This Court sees no reason to excuse Petitioner's failure to exhaust administrative remedies. See Brown v. Grondolsky, 2009 WL 2778437 (D.N.J. Aug. 31, 2009) (dismissing § 2241 petition for failure to exhaust where petitioner argued that exhaustion was unavailable because the warden did not consider any inmates for a 12-month CCC placement); Shoup v. Schultz, 2009 WL 1544664 at *4 (D.N.J. June 2, 2009) ("While Petitioner invites this Court to reach an umbrella conclusion that no exhaustion of administrative remedies is ever required for any litigant raising a § 2241 challenge on the grounds of the Second Chance Act, this Court declines the invitation and finds that such holding would fly in the face of the Third Circuit's teaching - as to the firmness of the exhaustion requirement").

    10. Because the face of the Petition establishes that Petitioner failed to exhaust administrative remedies regarding his CCC placement under the Second Chance Act and because Petitioner has not shown that the failure to exhaust should be excused, this Court will dismiss the Petition for failure to exhaust administrative remedies. See Lindsay v. Williamson, 271 Fed. App'x. 158, 160 (3d Cir. 2008) (affirming summary dismissal

of § 2241 petition challenging BOP's execution of sentence "[b]ecause the District Court could determine from the face of Lindsay's petition that he did not exhaust his administrative remedies, a prerequisite to suit").

    11.  An appropriate Order accompanies this Opinion.


                                                 /s/ Noel L. Hillman
                                                 **NOEL L. HILLMAN, U.S.D.J.**

Dated:  April 29 , 2011

At Camden, New Jersey